IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAIVA A.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 19 C 04439 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Daiva A.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Dkt. 12, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [Dkt. 22, Def.'s Mot.] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Kilolo Kijakazi has been substituted for her predecessor.

**BACKGROUND**

**I.    Procedural History**

On November 23, 2015, Plaintiff filed a claim for DIB and SSI, alleging disability since January 1, 2015 due to bipolar disorder. [R. 15, 86.] Plaintiff's claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 9, 2018. [R. 15.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 29-32.] Vocational expert ("VE") Pamela Tucker also testified at the initial hearing. [R. 48.] On June 13, 2018, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 23.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

**II.   The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 16.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 1, 2015. [R. 17.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: bipolar disorder and anxiety disorder. [R. 17.] The ALJ concluded at step three that her impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 18-20.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels except that she can understand, remember, and carry out simple instructions and make simple work-related decisions; she can tolerate occasional changes in a routine work setting, occasional

interactions with supervisors and co-workers, but no interaction with the public; and she cannot do work with a production rate pace, but can do work with end-of day requirements. [R. 20-22.] At step four, the ALJ concluded that Plaintiff would be able to perform her past relevant work as a welder, and thus concluded that she is not disabled under the Social Security Act. [R. 22-23.]

## **DISCUSSION**

### I.    Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.*, at 327.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

**II. Analysis**

Plaintiff makes three arguments challenging the ALJ's decision: (1) the ALJ improperly evaluated whether plaintiff met a listing; (2) the ALJ improperly crafted both Plaintiff's physical and mental RFC, and (3) even accepting the ALJ's RFC, the ALJ erred in concluding that Plaintiff could perform her prior work as a welder. The Court concludes that the ALJ erred in crafting

Plaintiff's mental RFC. Because this error requires remand, the Court need not assess Plaintiff's other arguments.

Plaintiff first argues that the ALJ erred in assessing whether Plaintiff met a listing, and although the Court does not reach this argument, an evaluation of whether the ALJ properly crafted Plaintiff's RFC requires discussion of the ALJ's findings with respect to whether Plaintiff met a listing. At step three, the ALJ concluded that Plaintiff had moderate limitations in four areas of functioning: (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace (CPP); and (4) adapting and managing herself. In determining the extent of Plaintiff's CPP difficulties, the ALJ noted that Plaintiff is able to drive and could follow the hearing process and answer questions appropriately. [R. 19.] The ALJ also noted that Plaintiff enjoys reading but is usually unable to finish a book she starts; that Plaintiff was unable to concentrate during a 2015 psychiatric hospitalization; that Plaintiff has exhibited "fair to good" attention/concentration on mental status examinations; that Plaintiff could perform simple math; and that Plaintiff reported that therapy is helping to improve her concentration. [R. 19.] In determining the extent of Plaintiff's limitations in adapting and managing herself, the ALJ found that Plaintiff is able to independently make plans for herself, prepare simple foods and use a microwave, do some household cleaning, maintain her hygiene, grooming, and attire, and use public transportation. [R. 19-20.]

Before step four, in crafting Plaintiff's RFC, the ALJ provided a narrative description of certain portions of Plaintiff's medical history. [R. 21.] The ALJ then recited what appears to be boilerplate language: that the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported

5

for the reasons explained in this decision." [R. 22.]; *see, e.g., Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (criticizing substantially similar language as "meaningless boilerplate"). After the boilerplate, the ALJ determined Plaintiff's RFC: "[I]n consideration of the claimant's subjective allegations of poor concentration, but also considering the objective medical evidence, I find that she is limited to understanding, remembering, and carrying out simple instructions and making simple work-related decisions, with no more than occasional changes in a routine work setting, and no work with production rate pace, although she can do work with end-of day requirements." [R. 22.] The ALJ furthered that "in consideration of the claimant's subjective allegations of difficulty being around other people, but also considering the objective medical evidence, I find that the claimant is limited to no more than occasional interactions with supervisors and co-workers and no interaction with the public." [R. 22.]

After crafting the RFC, the ALJ evaluated the only opinion evidence in the record, which came from a state agency psychologist and a state agency psychiatrist. The ALJ found that "the state agency psychological consultants opined that the claimant had moderate restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and had experienced one or two repeated episodes of decompensation, each of extended duration." [R. 22.]. The ALJ also noted that the "State Agency psychiatric consultant further opined that claimant was moderately limited in the ability to carry out detailed instructions; maintain attention and concentration for extended periods; interact appropriately with the general public; [and] respond appropriately to changes in the work setting." [R. 22.] The ALJ "assigned great weight to these opinions," finding that "they are consistent with the overall record discussed above." [R. 22.]

6

The ALJ erred in multiple respects in crafting Plaintiff's mental RFC. First, the ALJ did not provide a meaningful or intelligible explanation for the limitations that she identified; she simply provided a narrative description of portions of Plaintiff's medical history followed by rote conclusions regarding Plaintiff's residual functional capacity. [R. 20-22.] But "[m]erely reciting the medical evidence in close proximity to conclusions does not create an accurate and logical connection between evidence and conclusions." *Hinton v. Colvin*, No. 10 C 2828, 2013 WL 2590711, at *7 (N.D. Ill. June 11, 2013). For instance, the ALJ concluded that Plaintiff would not be able to perform work at a production rate pace, but would be able to perform work with end-of day requirements. [R. 22.] But the ALJ provided no reason why she arrived at that distinction, leaving the Court wondering why the ALJ drew that particular line. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) ("[T]he ALJ did not explain how he arrived at these conclusions [regarding specific limitations]; this omission in itself is sufficient to warrant reversal of the ALJ's decision.").

In this way, the ALJ's RFC is similar to those that the Seventh Circuit has regularly criticized. For example, the ALJ concluded that Plaintiff had moderate CPP limitations and moderate limitations in adapting and maintaining herself, [R. 19]; so the ALJ was therefore required to appropriately account for those limitations in crafting the Plaintiff's RFC. The ALJ, however, failed to provide a meaningful connection between Plaintiff's specific CPP limitations and the functional limitations identified in the RFC. "When it comes to the RFC finding, we have [] underscored that the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

7

Likewise, with respect to the "production rate pace" limitation identified by the ALJ, [R. 22], the ALJ failed to connect that limitation to Plaintiff's specific CPP deficits. *See Seals v. Saul*, No. 18 C 7738, 2020 WL 1689815, at *4 (N.D. Ill. Apr. 7, 2020) ("Limiting plaintiff to jobs that required him to perform only simple, routine tasks and make simple decisions without having to maintain a 'production rate pace' did not account for the possibility that, given his moderate difficulties in concentration, persistence, and pace, plaintiff might not be able to 'do so on a sustained basis' at any pace, even a slow one."). At a minimum, the ALJ was required to explain why the limitations identified in her RFC—including the production rate pace limitation—properly accounted for the specific, moderate CPP limitations that the ALJ found that the Plaintiff had (as well as Plaintiff's moderate limitations in adapting and maintaining herself). *See, e.g., id*. ("The ALJ did not connect plaintiff's particular difficulties in concentration, persistence, and pace, or their underlying cause, to the limitations contained in her hypothetical to the VE, and this defect requires remand."). The ALJ failed to provide any reason why Plaintiff's specific CPP limitations yielded the functional limitations identified in the RFC, and thus did not adequately build a logical bridge between the evidence and her conclusions.

The Administration defends the ALJ's RFC by stressing that it is consistent with the only medical opinions in the record, which came from a state agency psychologist and a state agency psychiatrist. There are two problems with the Administration's position, however. First, for most of the limitations included in the RFC, the ALJ did not cite or credit specific corresponding functional limitations identified by the state agency consultants; by and large, the ALJ noted—and assigned great weight to—the consultants' opinions that Plaintiff had moderate limitations in certain areas of functioning (*i.e.*, moderate limitations in "maintain[ing] attention and concentration for extended periods," "interact[ing] appropriately with the general public,"

8

"maintaining concentration, persistence, or pace," "maintaining social functioning," etc.). [R. 22.] Notably, however, neither of the state agency consultants opined—and the ALJ provides no other explanation for the limitation—that Plaintiff would be unable to perform work with a production rate pace, but would be able to perform work with end-of day production requirements. [R. 55-67, 85-98.] Yet the ALJ included that limitation in Plaintiff's RFC without any explanation. If indeed the "ALJ was persuaded by something in the record or testimony from Claimant [her]self that [the ALJ] felt required" the specific pace limitation the ALJ imposed, "it is not clear what evidence the ALJ relied upon in reaching that conclusion." *Keno B. v. Kijakazi*, No. 19 C 1593, 2021 WL 3290809, at *4 (N.D. Ill. Aug. 2, 2021). The Administration cannot justify the ALJ's RFC by reference to medical opinions in the record when those opinions do not identify certain limitations included in the RFC, and the ALJ has not otherwise explained the basis for the additional limitation. *Id*. at 5 ("While the ALJ may have given Claimant *some* benefit of the doubt, the ALJ did not credit all his testimony and/or the additional evidence introduced at the hearing level, and the Court does not know how the ALJ made that distinction and determination. That is where the problem lies.").

      Second, the Administration's argument that the ALJ's unexplained RFC can be supported by the ALJ's reference to the state agency consultant medical opinions is undermined by a broader problem with the ALJ's analysis: that the ALJ improperly ignored at least one important line of evidence in analyzing the medical record. The ALJ gave just one, perfunctory reason why she assigned great weight to the state agency consultants' opinions: "they are consistent with the overall record discussed above." [R. 22.] The only "discussion" in the ALJ's decision of Plaintiff's limitations—beyond simple narrative recitation of portions of the medical record—is in the ALJ's assessment of whether Plaintiff met a listing. In that section, the ALJ noted that the

9

record indicated Plaintiff had only moderate CPP limitations because, notwithstanding her testimony regarding her ability to concentrate, Plaintiff was able to drive, followed and answered questions at her hearing before the ALJ, showed "fair to good" attention/concentration on mental status examinations, could perform simple math, and found therapy helpful for her concentration. [R. 19.] The ALJ further noted that Plaintiff had only moderate limitations in maintaining and adapting herself because she could independently make plans for herself, prepare simple foods and use a microwave, do some household cleaning, maintain her appearance and attire, and use public transportation. [R. 19.].

In evaluating Plaintiff's limitations with respect to both CPP and adapting and maintaining herself, the ALJ failed to meaningfully discuss what appears to be one of the most serious and persistent symptoms of Plaintiff's bipolar disorder, however: Plaintiff's sleep disturbances and exhaustion. Although the ALJ was not required to discuss every piece of evidence, "she cannot ignore a line of evidence contrary to her conclusion." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). An ALJ "must confront the evidence that does not support her conclusion and explain why that evidence was rejected." *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016). At the hearing in this case, Plaintiff raised and testified that she regularly has periods in which she alternates between sleeping for days at a time and not sleeping at all. [R. 46.] Plaintiff testified that she sleeps for three days in a row at least once per month. [R. 46.] Plaintiff's testimony finds ample support in the medical record. As far back as 2012, Plaintiff reported to a therapist that she would sleep for three days in a row during depressive episodes. [R. 386]. In March 2015, Plaintiff reported to her psychiatrist that she has difficulties with sleeping, including that she might sleep for three days in a row (days and nights) and then not sleep at all the next three nights. [R. 656.] In August 2015, Plaintiff was hospitalized for a manic episode during which she had racing

10

thoughts, intense anxiety, and trouble sleeping for two weeks prior to her admission. [R. 397, 423.] This was not Plaintiff's first hospitalization; in March 2016, she reported to a consulting psychologist that in 2005, she had a prolonged hospitalization and did not sleep for 17 days. [R. 957.] She also reported to the consulting psychologist that she would sleep for two days at a time, and that once a week she will sleep for 24 hours, followed by a period of being awake for 24 hours. [R. 958.] In March 2017, her psychiatrist noted that she had a long history of intermittent depression and irritability, and episodes of not sleeping for a few days followed by exhaustion. [R. 1269.] Plaintiff repeatedly reported sleep disturbances throughout 2017. [R. 1265, 1269, 1284, 1289, 1293.] In March 2018, Plaintiff reported to a new mental health provider that she does not sleep a lot during manic episodes, which can last up to three days; she also reported that she will stay in bed for anywhere from 1 night to 3 days to 1 week at other times. [R. 1307-08.]

In the only portion of her opinion in which the ALJ meaningfully analyzed Plaintiff's symptoms—her assessment of whether Plaintiff met a listing—the ALJ did not mention Plaintiff's patterns of sleeping or remaining awake for days at a time. [R. 18-20.] The ALJ referenced, but did not analyze, some of Plaintiff's complaints about sleep disturbance in her narrative account of portions of Plaintiff's medical record prior to determining the RFC; notably, however, the ALJ did not mention that many of Plaintiff's records with respect to sleep disturbance indicate that she has had patterns of sleeping and remaining awake for days at a time. [R. 21].

It was error for the ALJ to ignore this serious symptom of Plaintiff's bipolar disorder that was both testified to by Plaintiff at the hearing and present throughout the medical record. This error is especially important because, at the hearing, the ALJ elicited testimony from the VE that employers would not be tolerant of an employee who missed more than one day of work per month, or who was off task for more than 15% of the day. [R. 51.] The ALJ did not, however, build into

11

the RFC any amount of off-task time or any need for additional days off or any other accommodation for Plaintiff's well-documented sleep and fatigue patterns. If the ALJ properly assessed Plaintiff's testimony and the corroborating medical evidence regarding the nature and extent of her sleep disturbances, it is, at a minimum, possible that the ALJ would find Plaintiff had limitations incompatible with full time work. But the ALJ almost entirely failed to assess the sleep-related symptoms of Plaintiff's bipolar disorder. This, too, was an error requiring remand. *See, e.g., Theresa M. v. Saul*, No. 19 C 3135, 2020 WL 7641286, at *6 (N.D. Ill. Dec. 23, 2020) (error for ALJ to ignore line of evidence that conflicted with RFC, suggesting that Plaintiff struggled to walk and used a cane to get around).

In short, the ALJ erred by failing to provide meaningful explanation and support for her RFC. That error was not cured by the ALJ's reference to the opinions of two state agency consultants, which did not include at least one key, unexplained limitation that the ALJ included in the RFC, namely that Plaintiff could not perform work with a production rate pace, but could perform work with end-of day requirements. In addition, in assessing the medical record and crafting the RFC, the ALJ ignored at least one important line of evidence suggesting that Plaintiff's bipolar disorder caused significant and potentially work-impactful sleep disturbances.

Because these errors require remand, the Court need not address Plaintiff's additional arguments that the ALJ erred in concluding that Plaintiff did not meet a listing and could perform her prior work as a welder, and that the ALJ erred in crafting Plaintiff's physical RFC.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [12] is granted, and the Commissioner's motion for summary judgment [22] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 4/18/2022

BETH W. JANTZ
United States Magistrate Judge